## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

HRB RESOURCES LLC,

        Plaintiff,

vs.                                      CASE NO.:

TINA OSBORNE,

        Defendant.

_____/

## VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff HRB Resources LLC ("H&R Block") files this Verified Complaint for Injunctive Relief and Damages against Defendant Tina Osborne ("Osborne"), and alleges as follows:

## INTRODUCTION

This action involves a former H&R Block tax advisor who has breached and is breaching restrictive covenants in her H&R Block employment agreement. H&R Block employed Osborne as a tax advisor at a Block Advisors tax office in Spring Hill, Florida. As a condition of her employment, Osborne signed an employment agreement containing, among other things, post-employment restrictive covenants that prohibit her from soliciting and preparing tax returns for certain specifically-defined H&R Block clients. During her employment with H&R Block, H&R Block provided Osborne with access to its most sensitive information about H&R Block's clients and business operations. These confidential, proprietary, and trade secret

materials include client lists, detailed information about its clients, and information about H&R Block's methods, training, and marketing strategies. Notwithstanding Osborne's contractual duties to H&R Block, Osborne has embarked on a course of improper activities in violation of her employment agreement with H&R Block.

On October 19, 2021, while still employed with H&R Block, Osborne formed a competitive tax return preparation business, TMO Tax Services, LLC ("TMO Tax Services"). On November 30, 2021, Osborne abruptly ended her employment with H&R Block and began actively competing against H&R Block on behalf of TMO Tax Services by using H&R Block's confidential, proprietary, and trade secret information to solicit and prepare taxes for H&R Block clients—the same clients for whom Osborne prepared taxes at H&R Block. Osborne's contractual breaches, including her use of H&R Block's confidential and proprietary information, are causing irreparable injury to H&R Block and depriving H&R Block of its opportunities to service its clients.

Time is of the essence, as the 2022 tax season is fully underway. H&R Block seeks immediate emergency injunctive relief to enjoin Osborne's unlawful conduct, and seeks damages to compensate H&R Block for financial losses already incurred. The specific details surrounding Osborne's improper acts are detailed below.

2

## PARTIES

1.      Plaintiff HRB Resources LLC is a limited liability company.  The sole member of HRB Resources LLC is H&R Block Management, LLC, a limited liability company.  The sole member of H&R Block Management, LLC, is H&R Block Group, Inc., a corporation authorized and existing under Delaware law with its principal place of business in Kansas City, Missouri.  Thus, HRB Resources LLC is a citizen of Delaware and Missouri.

2.      On information and belief, Defendant Osborne is a resident of Spring Hill, Florida.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) because H&R Block has asserted a claim for misappropriation of trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1831, *et seq*., and pursuant to 29 U.S.C. § 1367 (supplemental jurisdiction) because H&R Block's pendant state law claims are so related to the federal claim that they form part of the same case or controversy.

4.      This Court also has subject matter jurisdiction under 28 U.S.C. § 1332 (diversity of citizenship) because there is complete diversity and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

PD.36942449.2

5.     Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to H&R Block's claims occurred in the Middle District of Florida.

## FACTS

### Background

6.     H&R Block is engaged in the highly competitive business of providing tax preparation and related services to companies and individuals throughout the United States.  It operates under the brand names "H&R Block" and "Block Advisors."

7.     In the tax preparation business, H&R Block has distinguished itself from its competitors by providing superior service to its clients and through its unique training, methods, marketing, and sales practices, as well as the strength of its existing client relationships.

8.     H&R Block employs tax advisors (also referred to as "tax preparers" and "tax professionals") for each tax season, which usually runs from approximately November of a given year through the tax filing deadline the next year (usually on or soon after April 15).  Tax advisors for Block Advisors work year-around to, among other things, handle the preparation of tax returns filed during tax season and after extensions, and to provide other alternative products, such as bookkeeping.

PD.36942449.2

9.     H&R Block employs its tax advisors pursuant to standardized written employment agreements that H&R Block and the tax advisors enter into annually.

10.     H&R Block has invested considerable resources in the training of its tax advisors, who are the face of the company to its clients at H&R Block's many field offices.  H&R Block provides its tax advisors with unique and extensive specialized training before each tax season.  With and through the goodwill and resources of H&R Block, these tax advisors form substantial relationships with H&R Block's clients.

11.     H&R Block has invested significant resources to develop its client base, including its client data, and the goodwill toward its expertise, reputation, and services.

12.     H&R Block has developed and maintains client databases containing critical information for millions of clients, including clients in its Block Advisors South East District.

13.     H&R Block's databases contain unique compilations of confidential and proprietary business information, such as:

        a.     the names, addresses (physical and e-mail), and telephone numbers of each client and prospective client of H&R Block;

      b.    the years each client has used H&R Block for tax services, together with the types of returns the client filed, and the schedules required for the returns;

      c.    the personal details relating to each client's tax returns, such as investments generating taxable income, occupation, employment addresses, and information concerning spouses and children;

      d.    the particular fees charged to each client; and

      e.    other information pertinent to serving each client and prospective client.

14.    H&R Block's client databases are extremely valuable assets and were compiled with the expenditure of significant time, effort, and resources over many years.

15.    The compilation of information contained in these databases is not generally known or readily ascertainable and, as such, could easily be exploited by H&R Block's competitors to allow them to gain a competitive advantage over H&R Block.

16.    To protect its confidential information as well as its client relationships, H&R Block has adopted company-wide written policies and procedures restricting the disclosure or use of the information other than for official company purposes.

6

17.    To further protect its confidential information and its client relationships, H&R Block requires its key personnel—including its tax advisors like Osborne—to enter into employment agreements with restrictive covenants to protect against the disclosure or use of the information other than for official company purposes and various other forms of unfair competition during and post-employment.

**Osborne's Employment and Violation of Her Employment Agreement**

18.    H&R Block employed Osborne as a tax professional or tax advisor from 2016 to 2021.   Before each tax season, Osborne entered into an employment agreement with H&R Block.

19.    For the 2021 tax season, Osborne entered into her Block Advisors Tax Advisor Employment Agreement with H&R Block on August 5, 2020 (the "Agreement").   A true and accurate copy of the Agreement is attached hereto as **"Exhibit A."**

20.    In Section 8(a) of the Agreement, Osborne agreed, both for the term of her employment and after, not to directly or indirectly:

> (i) misappropriate, make copies of, or remove from H&R Block's offices any Confidential Business Information of H&R Block, (ii) make known, divulge, or communicate to any person or entity any Confidential Business Information of H&R Block, or (iii) use any Confidential Business Information of H&R Block for any reason other than as necessary to enable Associate to properly perform Associate's duties.

7

Ex. A, § 8(a).

21.     Section 8(c) of the Agreement defines "Confidential Business Information" to include, among other things, H&R Block's client lists and specific information pertaining to H&R Block's clients. *Id.* at § 8(c).

22.     In the Agreement, Osborne agreed to the following restrictive covenants:

> Associate covenants that for two (2) years following the cessation of Associate's employment hereunder for any reason (the "Restricted Period"), Associate will not directly or indirectly:
>
>> (1) Provide any of the following services to any Company Client: (i) preparation of tax returns; (ii) electronic filing of tax returns; or (iii) any Alternative Products or Services; or
>>
>> (2) Solicit Company Clients for the purpose of offering to such clients: (i) tax return preparation services; (ii) electronic filing of tax returns; or (iii) any Alternative Products or Services.

*Id.* at § 10(a).

23.     The Agreement narrowly defines "Company Clients" as:

> [E]very person or entity whose federal or state tax return was prepared or electronically transmitted by Associate, or for whom Associate provided any Alternative Products or Services, during the term of this Agreement or during any period of time in which Associate was employed by the Company or an affiliate during the twelve (12) months immediately preceding the effective date of this Agreement.

*Id.* at § 10(c).

24.     The Agreement further defines "Alternative Products or Services" as "products or services, other than the preparation or electronic filing of tax returns, that the Company provides to clients within Associate's district of employment (for example, bookkeeping if provided in such district)." *Id.* at § 10(d).

25.     The restrictive covenants in the Agreement are enforceable in that they protect H&R Block's valid and legitimate business interests, the restrictions are reasonably limited to H&R Block "Company Clients," they cover a reasonable time period, and they are supported by adequate consideration under Florida law.

26.     During her employment with H&R Block, Osborne received unique and specialized training; learned about H&R Block's business methods, sales practices, and marketing strategies; and formed substantial relationships with the numerous clients for whom she prepared tax returns.  She also regularly accessed and used H&R Block's confidential client databases.

27.     During the 2021 tax season, Osborne worked at the Block Advisors tax office at 5330 Spring Hill Drive, Spring Hill, Florida 34606.  She prepared 562 tax returns for H&R Block Company Clients during the 2021 tax season.  Osborne was known at H&R Block as a "high writer," meaning she prepared tax returns for a large H&R Block client base.

28.     Unbeknownst to H&R Block at the time, on October 19, 2021, Osborne formed TMO Tax Services, a competitive tax return preparation business.

9

29.     Knowing of her plans to unlawfully compete against H&R Block during the 2022 tax season, Osborne did not schedule any appointments with H&R Block clients for the 2022 tax season to occur at the H&R Block Spring Hill office, as she and other tax advisors normally would do in the Fall to prepare for the upcoming tax season.

30.     On November 30, 2021, Osborne ended her employment with H&R Block.

31.     Since her departure from H&R Block, Osborne has been actively soliciting H&R Block Company Clients on behalf of TMO Tax Services for the purpose of providing them with tax preparation services.

32.     Osborne has been unlawfully soliciting and servicing H&R Block's Company Clients in violation of her Agreement.

33.     Osborne contacted H&R Block client, Jim Engelage ("Engelage"), by telephone in December 2021 and told him she "decided to leave H&R Block and go out on her own."  A true and accurate copy of the Declaration of Jim Engelage is attached as **"Exhibit B."**

34.     Thereafter, on December 13, 2021, Osborne sent Engelage the following solicitation e-mail regarding TMO Tax Services:



(*Id.*)

35.   The flyer included in the solicitation e-mail stated that TMO Tax Services offered "Better Prices," among other benefits:

PD.36942449.2



*(Id.).*

36.     On information and belief, this solicitation e-mail to Engelage was a blast e-mail sent to numerous H&R Block Company Clients.

37.     Osborne followed up the blast e-mail to Engelage with another telephone call to him in which she left him a voice message offering to provide him tax services.  *(Id.).*

38.     Multiple H&R Block Company Clients have reported and continue to report to H&R Block that Osborne has contacted them for the purposes of providing them with tax preparation services for the 2022 tax season.

PD.36942449.2

39.     On December 23, 2021, H&R Block's counsel sent Osborne a demand letter requesting that she cease and desist her contractual violations.  A true and accurate copy of the letter is attached as **"Exhibit C."**

40.     As of the date of this Complaint, Osborne has not responded to H&R Block's letter and is continuing to solicit and provide services to H&R Block Company Clients in violation of her Agreement.  Specifically, one client previously serviced by Osborne at H&R Block brought in her 2021 tax return in February 2022 for a "Second Look®" (a service whereby H&R Block reviews a prepared tax return and provides an opinion about it without charge).  The 2021 tax return had been prepared by Osborne (on behalf of TMO Tax Services) on January 27, 2022.  On February 23, 2022, another client claimed Osborne told her that she might as well have her 2021 tax return prepared by Osborne at TMO Tax Services because Osborne possessed the client's tax file from previous years.   The client expressed that she was upset that Osborne had taken her tax file from H&R Block to her new business without consent.  A true and accurate copy of the Declaration of Teri Kammer is attached as **"Exhibit D**."

41.     On information and belief, Osborne continues, and will continue, to act in breach of her contractual obligations to H&R Block.

42.     Osborne's actions are in direct violation of her Agreement with H&R Block.

PD.36942449.2

43.    H&R Block has retained undersigned counsel to enforce its rights pursuant to the Agreement, and is obligated to pay reasonable attorneys' fees for counsel's services.

## COUNT I
### (Breach of the Agreement)

44.    H&R Block adopts and incorporates all of its preceding allegations as if fully set forth herein.

45.    The Agreement is a valid and enforceable contract.

46.    The restrictive covenants in the Agreement are reasonable, valid, and tailored to reasonably protect H&R Block's confidential business information and trade secrets as well as its valuable client relationships.

47.    The provisions of the Agreement are designed to protect the significant investments H&R Block has made in its business operations, training, marketing efforts, and in its substantial client relationships.

48.    H&R Block has performed each and every obligation and condition required of it pursuant to the Agreement.

49.    On information and belief, Osborne has taken and used confidential business information and trade secrets from H&R Block and has solicited, served, and will continue to solicit and provide tax return preparation services to numerous H&R Block Company Clients on behalf of TMO Tax Services.

14

50.     Osborne has failed to perform her obligations under the Agreement and, therefore, has materially breached the terms and conditions of the Agreement. Specifically, Osborne has breached Sections 8 and 10 of the Agreement.

51.     H&R Block has suffered and will continue to suffer actual and threatened injuries as a direct result of Osborne's breaches, including, without limitation, the loss of its confidential and proprietary information, trade secrets, clients, business reputation, market share, profits, and goodwill.

52.     H&R Block has suffered monetary damages as a result of Osborne's solicitation and servicing of H&R Block's clients, in violation of the Agreement.

WHEREFORE, H&R Block demands that:

A.     Osborne be enjoined from breaching any and all of her contractual obligations to H&R Block under the Agreement; and

B.     An award be entered against Osborne for compensatory damages, attorneys' fees, pre-award interest, and other remedies to the fullest extent permissible under applicable law.

## COUNT II
### (Misappropriation of Trade Secrets under the Florida Uniform Trade Secrets Act)

53.     H&R Block adopts and incorporates all of its preceding allegations as if fully set forth herein.

PD.36942449.2

54.     H&R Block's client lists and client information enable it to obtain an advantage over its competitors who do not know or use this information.

55.     This confidential and proprietary business information of H&R Block derives independent economic value, actual or potential, from not being generally known and not being readily ascertainable by proper means by other persons who can obtain economic value from their disclosure and are trade secrets belonging to H&R Block within the meaning of the Florida Uniform Trade Secrets Act.  Fla. Stat. § 688.001, *et seq.*

56.     H&R Block uses reasonable efforts to maintain the secrecy of its confidential and proprietary business information and trade secrets.

57.     H&R Block's confidential and proprietary business information and trade secrets are not readily ascertainable by the public.

58.     On information and belief, Osborne took and used H&R Block's confidential and proprietary business information and trade secrets, including its client information, to unlawfully compete with H&R Block.

59.     Osborne acquired H&R Block's confidential and proprietary business information and trade secrets through a breach of confidential relationship between Osborne and H&R Block.

60.     By obtaining, possessing, and using the confidential information, Osborne has misappropriated and unlawfully used H&R Block's trade secrets.

61.     Osborne's conduct is in violation of Florida law.

62.     H&R Block has been damaged by Osborne's misappropriation and unlawful use of its trade secrets.

63.     Osborne's violations have been willful and malicious within the meaning of the Florida Uniform Trade Secrets Act.

64.     H&R Block's competitive advantage in the marketplace is critically dependent on H&R Block's ability to maintain the confidentiality of its trade secrets. H&R Block has been irreparably harmed and will continue to be irreparably harmed by Osborne's misappropriation of its trade secrets.

65.     If not enjoined, Osborne will continue to misappropriate and use H&R Block's trade secrets for her benefit and to H&R Block's detriment.

WHEREFORE, H&R Block demands that:

A.     An injunction be entered prohibiting Osborne, and all persons acting in concert or participation with her, from using or disclosing trade secrets of H&R Block, including client lists and specific information pertaining to H&R Block's clients;

B.     An award be entered against Osborne for damages for actual loss caused by the misappropriation of H&R Block's trade secrets and damages for unjust enrichment caused by the misappropriation of H&R Block's trade secrets that are not addressed in computing damages for actual loss;

17

C.    An award be entered against Osborne for exemplary damages for willful and malicious misappropriation of trade secrets; and

D.    An award be entered against Osborne for attorneys' fees, pre-award interest, and other remedies to the fullest extent permissible under applicable law.

**COUNT III**
**(Misappropriation of Trade Secrets**
**under the Federal Defend Trade Secrets Act)**

66.    H&R Block adopts and incorporates all of its preceding allegations as if fully set forth herein.

67.    The confidential and proprietary business information of H&R Block, as detailed herein, constitutes trade secrets belonging to H&R Block within the meaning of the Defend Trade Secrets Act, 18 U.S.C. § 1831, *et seq.*

68.    H&R Block's trade secrets and confidential information are not readily ascertainable by the public, and H&R Block has taken reasonable steps to protect the secrecy of that information.

69.    H&R Block derives independent economic value from its trade secrets and confidential business information by virtue of its secrecy.

70.    Osborne had access to, and, on information and belief, obtained and continues to possess and use, H&R Block's confidential information and trade secrets, including, but not limited to, H&R Block's client lists and other detailed, client-specific data and information.

18

71.    Osborne was aware of her obligations to maintain the confidentiality of H&R Block's trade secrets and confidential business information.

72.    On information and belief, Osborne, in violation of the Defend Trade Secrets Act, has taken and made use of this information to H&R Block's detriment.

73.    Osborne's violations have been willful and malicious within the meaning of the Defend Trade Secrets Act.

74.    H&R Block's competitive advantage in the marketplace is critically dependent on H&R Block's ability to maintain the confidentiality of its trade secrets. H&R Block has been irreparably harmed and will continue to be irreparably harmed by Osborne's misappropriation of its trade secrets.

75.    If not enjoined, Osborne will continue to misappropriate and use H&R Block's trade secrets for her benefit and to H&R Block's detriment.

WHEREFORE, H&R Block demands that:

A.    An injunction be entered prohibiting Osborne, and all persons acting in concert or participation with her, from using or disclosing trade secrets of H&R Block, including client lists and specific information pertaining to H&R Block's clients;

B.    An award be entered against Osborne for damages for actual loss caused by the misappropriation of H&R Block's trade secrets and damages for unjust

PD.36942449.2

enrichment caused by the misappropriation of H&R Block's trade secrets that are not addressed in computing damages for actual loss;

C.    An award be entered against Osborne for exemplary damages for willful and malicious misappropriation of trade secrets; and

D.    An award be entered against Osborne for attorneys' fees, pre-award interest, and other remedies to the fullest extent permissible under applicable law.

**COUNT IV**
**(Injunctive Relief)**

76.    H&R Block adopts and incorporates all of its preceding allegations as if fully set forth herein.

77.    Injunctive relief is necessary to maintain the status quo of the parties pending final resolution of disputes between the parties pursuant to the arbitration provisions of the Agreement.   The Agreement expressly permits the filing of claims in court for temporary or preliminary injunctive relief "for maintenance of the status quo pending arbitration." *See* Ex. A, § 17(c).

78.    H&R Block, in an effort to mitigate its damages, seeks entry of a preliminary and permanent injunction enjoining Osborne, and those acting in concert with her, from violating the terms of the Agreement and from misappropriating trade secrets.   There is no adequate remedy at law to prevent Osborne's wrongful conduct, unless Osborne is enjoined from continuing her wrongful conduct.

20

79.     There is a substantial likelihood that H&R Block will prevail on the merits of this action.

80.     H&R Block has suffered and will continue to suffer irreparable injury if injunctive relief is not granted, and the actual and threatened injury to H&R Block outweighs any potential injury to Osborne, who has no legal right or justification to breach the Agreement.

81.     The granting of injunctive relief will serve the public interest in enforcing the contractual rights of parties, and in limiting the extent of damages H&R Block will incur as a result of Osborne's continued contractual breaches.

WHEREFORE, H&R Block demands that the Court:

A.     Enter an injunction restraining Osborne and those in active concert or participating with her from:

> 1)   directly or indirectly contacting or soliciting H&R Block Company Clients[1] for the purpose of providing any of the following services: (a) preparing tax returns, (b) filing tax returns electronically, or (c) providing bookkeeping or any other alternative or additional service that H&R Block provides;
>
> 2)   providing any of the following services to any of H&R Block's Company Clients: (a) preparation of tax returns, (b) filing tax

---

[1] For the purposes of this request for injunctive relief, an "H&R Block Company Client" is defined as every person or entity whose federal or state tax return was prepared or electronically transmitted by Osborne, or for whom Osborne provided any Alternative Products or Services, during the term of the Agreement or during any period of time in which Osborne was employed by H&R Block or an affiliate during the twelve (12) months immediately preceding the effective date of the Agreement.

21

returns electronically, or (c) providing bookkeeping or any other alternative or additional service that H&R Block provides;

3)   using or disclosing confidential or proprietary information or any trade secrets of H&R Block, including client names and data;

4)   retaining or failing to return to H&R Block any personal property, documents, electronic files, and confidential or proprietary information of H&R Block or regarding H&R Block's clients or business relationships, including any and all copies thereof; and

5)   otherwise breaching her contractual duties to H&R Block, or facilitating such breaches.

B.   Following issuance of a preliminary injunction, enter a stay of this action pending arbitration seeking monetary damages and a permanent injunction;

C.   Enter an order awarding H&R Block its court costs, and reasonable attorneys' fees and expenses; and

D.   Order such other or further relief as the Court deems just and proper.

Date: March 28, 2022.

PD.36942449.2

Respectfully submitted,


*/s/ Dennis M. McClelland*
Dennis M. McClelland (Lead Counsel)
 Florida Bar No. 0091758
Austin A. Laurienzo
 Florida Bar No. 1011546
PHELPS DUNBAR LLP
100 South Ashley Drive, Suite 2000
Tampa, Florida  33602-5315
Telephone:  813-472-7550
Facsimile:  813-472-7570
dennis.mcclelland@phelps.com
austin.laurienzo@phelps.com

Attorneys for Plaintiff HRB Resources LLC

PD.36942449.2

## VERIFICATION

STATE OF FLORIDA       )
                            )
COUNTY OF _Alachua_   )

     I, Amber Howell, being duly sworn, state that I am employed as the District General Manager for the Block Advisors South East District, that I have read the foregoing Verified Complaint for Injunctive Relief and Damages, and that the statements contained therein are true and accurate to the best of my knowledge, information, and belief.

                                    Amber Howell

Subscribed and sworn to before me this 26 day of March, 2022.

                                  NOTARY PUBLIC

ALICIA LAFRANCE
MY COMMISSION #HH229062
EXPIRES: FEB 15, 2026
Bonded through 1st State Insurance

                                  My Commission Expires: _2/15/26_

PD.36942449.2